Good morning, Your Honors. May it please the Court, I'm Allison Clare, Assistant Federal Defender, on behalf of Ms. Matkin. Because this case is governed by the ADPA, I want to start directly with discussing the clearly established Federal law that governs and its application by the California Court of Appeals in this case. The U.S. Supreme Court first announced in Allen v. United States, and affirmed a century later in Lowenfield, that although the Constitution doesn't forbid a trial judge from addressing a jury impasse and returning the jury for further deliberations with instruction regarding the duty to deliberate, those instructions may not be coercive. And this Court has had quite a bit of experience in applying that standard, as have the States. Excuse me. Coercion in this context means imposing undue pressure, judicial pressure, on the minority jurors, I beg your pardon, to acquiesce in the direction of the majority. Now, it's very clear under Federal law and California law that the duty of a juror in deliberating is twofold. On the one hand, to maintain one's own honest, conscientious beliefs in what the evidence does or does not show. On the other hand, to be willing to consider the conscientious beliefs of one's fellows and entertain the question, am I wrong, without surrendering the duty to reach an individual conscientious verdict. Well, counsel, isn't this pretty much a straightforward Allen charge? I think that it is. And apart from the fact that we almost universally upheld Allen charges? No, this Court has not, in fact. There has been a very clear split. I'm talking about we in the larger sense, that we are applying supreme court law, not necessarily law of the circuit. Isn't that true? And the supreme court law is there must be no coercion as evaluated on the totality of the circumstances. Coercion is a mixed question of fact and law, and it is a relatively broad standard. In the AADPA context, a good analog, I believe, is the ineffective assistance of counsel cases, because we also have a broad standard to do with the reasonableness of counsel's conduct. And imported into the AADPA analysis as to the reasonableness of counsel's conduct and the reasonableness of State court adjudication thereof, we look to objective rules such as ABA standards. In the context of a trial judge exercising his or her duties, we similarly have model instructions and other standards that set forth the interpretation of Allen. And all of those judicial standards clearly state that in order to be proper under Allen, to be noncoercive, the judge must equally remind the jurors of the duty to maintain one's own conscientiously held beliefs while considering the views of others. In this case, the judge only told the jurors to give up their roles as advocates and listen to opposing views, and said nothing about the duty not to acquiesce in the majority. That is what makes it coercive. And this question --" Roberts, that's the particular problem with this particular Allen charge, that it failed to include that particular --" I think that is the primary problem. There are other circumstances that I think make the coercive effect even more pronounced. But that is the primary problem. And you get there, I take it, from the fact that the judge reminded them that you are not advocates, you are finders of fact? That's correct. And so we would have to infer from that that he was speaking to the holdout jurors, who obviously must have been advocating for a different result than what the majority used. I think that is an absolutely fair interpretation of the instruction and what the minority jurors would have understood. And it's the effect of this instruction on the minority jurors that is at issue in the coercion analysis. Now, I take it under California law, there's nothing improper in the judge asking for the numerical head count as long as he doesn't ask them which way they're standing. That's correct. Under California law, that inquiry itself is not impermissible. In the coercion analysis, our position is that having asked for that inquiry is one factor which is relevant to the overall impact of the charge on the minority jurors. And in Jimenez, the State court, also a California case where it was not improper to ask, all the judge did there was to ask twice and explicitly note, oh, I see there's movement, that's a good thing, it means you guys are doing your job, keep going. That's actually a less problematic instruction than the one in this case, and this Court found it coercive under Allen. We have – I think this is right. We have approved trial judges basically saying, look, if it looks like there's some movement here, it probably would be productive for you to go back and continue deliberations. There's nothing wrong with that. Is there under our – Standing alone, no.  Well, I mean, we're back to the – you and I have had this conversation before. We're back to the endless and unanswered question under AEDPA. The California appellate courts looked at this and concluded that it was not coercion. You're telling us, as members of the Ninth Circuit Court of Appeals, that it was not that we should look at Ninth Circuit law and revisit that issue and essentially declare the opposite, but then we have to go one step further, and that is to declare that the California appellate courts were objectively unreasonable in making that determination. Let's look at the DCA's decision, because I'm saying that Jimenez, Weaver, and also Mason are examples of reasonable application, not that they directly govern. The main problem I have with the court of appeals decision, which is at tab 4, on page 9, the paragraph beginning first after review of the court's statements, purports to be about whether or not there was coercion. The paragraph begins and ends with the fact val non of coercion being the topic. However, the contents of that paragraph do not go to the question whether the Allen instruction was, in fact, coercive. It goes to the propriety of sending the jury back for further deliberations. That is a separate question. This is not, in fact, coercion analysis. Allen and Lowenfield and the California cases, Gaynor summarizes them all, the Ninth Circuit's cases, all make clear there are two questions. One is, does the trial judge send the jury back to keep going? But even if that is perfectly proper, Allen and Lowenfield say the way in which the jury is instructed about what to do when it goes back may not be coercive. And the contents of this was legitimately persuaded that further deliberations would be productive. I'd point out that even that conclusion, however, is belied by the record. The trial judge had been told that there had already been two votes, 8-4-9-3. So there was still considerable dissension, and two votes had been taken before the jury sent the note saying we didn't reach a verdict. Moreover, the trial judge did not ask the foreperson or the jurors as a body whether further deliberations would be constructive. There was no inquiry as to the nature of the impasse. But if he knew that there had been two prior votes and that there had been a change in the voting, can't he assume that there might be further movement if he sent them back to continue deliberating? Since they were still so far from unanimity, I don't think that one could assume that without inquiring further. Three votes isn't that far from unanimity. I'd agree with you if it was 5 and 7, but — Rather than argue that particular point, although I stand by mine, I still think that the overarching point here is that this discussion by the DCA has to do with whether the jury had deliberated long enough or should be asked to deliberate further. That is not the issue. The issue is that when the judge sent them back to deliberate further, assuming that was proper, if he was going to tell them, don't be an advocate, don't stick to your position without being willing to entertain the opposite view, he did not also say, don't give in just because you're in the minority. He was obligated to do that because the failure to do so was coercive. So basically — I was going to say, Counsel, do you have any comment on that passage of the same DCA appeal where the Court says, by failing to object promptly or at all, appellant waived any error? The magistrate judge quite correctly cited the case of People v. Barzaga, the California case which I've also cited, in which the California Supreme Court said that failure to object to an Allen charge does not waive it for appeal. And the reply brief cites numerous intermediate court of appeals decisions that also hold that. Kennedy, you only have 40 seconds left. If you want to reserve your minute, very good. I'll save those 40 seconds. Thank you. We'll hear from the government. Good morning. May it please the Court. I'm Deputy Attorney General Rob Nash, and I represent the respondent, Gloria Henry. I have a very brief statement about the standard and the role that the AEDPA plays in Allen charge cases, and then I'd like to address some of the points made by the petitioner. We know that they've been around for over 100 years. We know that in Lowenfeld, the U.S. Supreme Court set out the totality of the circumstances test. But I think the most important guidance comes from the 2003 case of Early v. Packer, the case that we have decided after the AEDPA was enacted. And in Early v. Packer, the Supreme Court indicated that a formulary statement of the test wasn't required. All that was required that the State appellate opinion was a fair import of the clearly established Supreme Court precedent. I think it's also worthy to note that the U.S. Supreme Court observed the role that the AEDPA had to play, and that at the end of the opinion, they indicated even if we agreed with the circuit court that there was coercion, that's not enough. Here it was at least reasonable that the State appellate court found that there wasn't, and under the AEDPA, in those circumstances, the State appellate opinion must stand. The primary point, it seems, that the petitioner of the Supreme Court ---- Breyer. Before you leave the standards, one of the curious things about applying to AEDPA for us is that we apply it all the time, and then we make decisions that are circuit law based on the application. That is a different inquiry than the strict AEDPA standard. Obviously, we look to what the State did in the reasonable interpretation of Supreme Court law and on Ninth Circuit law. But once the Ninth Circuit has spoken on a habeas case, doesn't that bind us as a matter of law of the circuit? I think that this Court has recognized that we can look to those cases and see that they have something to say that they can be in circumstances persuasive. But ultimately, under the AEDPA, the question is clearly established Supreme Court precedent. Yes. I'm not quarreling with you about that, but I'm raising a slightly different issue, and it's not perhaps precisely raised in this case, but your opening brought it to mind, and that is this. Let's assume we have identical cases out of California raising the same issue, a habeas question. One panel issues an opinion that says, yes, even under the AEDPA, this violates clearly established law of the Supreme Court. Panel B, is Panel B free, under identical circumstances, to make the opposite conclusion? I think it would be, Your Honor. I think it would be, because... I don't think so, because I think that is the law of the circuit, and that's a separate question from the strict application of AEDPA. I guess what I'm saying, suggesting, and I'm just asking for your reactions, once, but it eventually gets into how do we think about Weaver and some of these other cases in this one. Once the circuit has spoken, as a matter of interpreting how AEDPA applies in a particular context, I think probably we're bound by circuit law. But I'm expressing my views or not views, but I guess I'm raising a question for you. Well, I think the difficulty in applying it in the AEDPA cases is ultimately looking for that clearly established Supreme Court precedent, especially when the clearly established Supreme Court precedent, such as this one, is a general statement. And in that, the Supreme Court has recognized the Court's intent to leeway, in particular cases, in applying that, you know, that general standard that clearly establishes the Supreme Court. Is it that, Mr. Nassar? I mean, I struggle with the same problem that Judge Thomas has raised. Is it that, or is it that Ninth Circuit case law can assist us in understanding what is clearly established Supreme Court precedent? And if you take his hypothetical, and we cannot distinguish the facts of this case from a case which a prior Ninth Circuit panel has ruled on under AEDPA, why wouldn't we be bound by a prior panel decision, assuming that, in good faith, we can't honestly distinguish the facts of that prior case? If we're going to look at a case and determine that they are identical facts, and there's a previous Ninth Circuit opinion that has indicated that in these circumstances the clearly established Supreme Court precedent is, and then concluding that it did not, and then determining what the prior of the clearly established Supreme Court precedent is, that's the challenge of the AEDPA, is determining what the clearly established Supreme Court precedent is. And the circuit cases are pertinent and have been indicated to be persuasive in guiding us as to finding that. But how do we reconcile that with the law of the circuit concept? I understand your point completely if it's a case that was simply a Federal case on direct appeal, and we enunciated Federal principles. But if we've decided the question of what this means in the habeas context, and, again, hypothetically, you have identical cases, it's hard for me to see how law of the circuit wouldn't preclude a panel from varying on that issue. I guess you probably said what you were going to say on that. But in that context, let's get to Weaver and some of these cases. Of what importance do you think it is that our circuit has spoken on the question raised by your opponent that you need a compensating instruction that, in which the jurors are told not to surrender their conscientiously held views? Two reactions to that. Pardon me, three. One is there was no counterbalancing instruction in Early v. Packer, the 2003 U.S. Supreme Court case. The need for the court specifically addressed the minority jurors and said to them, if you're in the minority and the other reason people feel a certain way, listen to them. The counter to that was to then tell them, look, you don't have to sacrifice your sincerely conscientiously held beliefs. In this case, the judge did not specifically address the minority jurors. He addressed the jurors as a whole and encouraged all of them to go back and look at the evidence and consider their position. He did not sync up minority jurors. Mr. Clare, I think, agreed with my summary that if you look at that portion of his instruction which discusses the role of advocates, that that's who he was talking to was the minority jurors. Well, in regard to the statement regarding advocates, first, that is part of the standard Calgary instruction, 17.41, don't be the jurors are not advocates. They were given that instruction before this case. So I would submit that the judge was repeating part of the standard Calgary instruction. Second, telling the jurors not to be advocates was part of the supplemental instruction Loewenfeld v. Phelps, the U.S. Supreme Court case, and it wasn't faulted in that case. But was that Calgary instruction given? I don't recall seeing the actual instructions that were given to the jury. It's 17.41, and it's in my supplemental excerpts of record. I believe it's the fourth tab. Okay. And so I think the judge was trying to place the evidence in context and asking the entire jury to go back and have a look at the case and then make a determination based on the evidence that had been submitted to them. Well, what significance is it that the California Court of Appeal got the timing wrong? Well, I would respectfully, Your Honor, I would submit that they didn't get the timing wrong. The timing is that the jury goes out and they deliberate for about three hours. They ask for some testimony. I'm sorry. They go out for about two hours. They ask for some testimony, go to lunch. The testimony is read to them. Then they come back and they deliberate further for a little over an hour. Then they send out the note saying they did not come up with a verdict. Right. Then a half hour later, I'm sorry, they send out a note saying they did not come up with a verdict. The judge addresses them, the instruction that we've been discussing. At 335, and then they go back and deliberate for another half an hour. Yeah. And then they ask for guidance on constructive possession, which I think is indicative of no coercion. They ask for further guidance on a principal point of law. Then they go for another 27 minutes. Then they send out a note saying they've come up with a verdict. But ultimately, there were more things to decide in the case. So I don't think we can draw the absolute conclusion that the verdicts were returned at 525. There were more things for the jury to do. Well, the jury announced they'd reached a verdict, and then they came in with a supplemental  strikes. Right. There were two counts, and then there were two counts of prior series felonies and two counts of prior prison terms. But I don't think it's a fair statement to say that the State court just got it wrong, because ultimately, the verdicts were returned at 525. We could draw an inference, if we would like to, that by sending out the note after they deliberated for an hour after being instructed that, you know, they had reached a, you know, a decision on the substantive issue. But the fact remains that the verdicts were still on the table because they weren't returned to the court. Well, they said they were deadlocked, and then they returned a verdict, and then some things happened. I mean, the most natural thing is that they had overcome their natural inference one can draw is they had overcome their deadlock, right? Sure. We could – I'm not saying that we couldn't draw that inference, but I also think it's worthy to note that even if we want to assume that's the best-case scenario, the jury deliberated for three hours. They were instructed. They were deliberated for half an hour. They got instructions on – they got instructions on constructive possession, and then they deliberated for another half an hour before they reached a verdict. So best-case scenario, 25 percent of the time, they were deliberated after the Allen charge. Thank you, counsel. Your time has expired. Ms. Clare. I think Mr. Nash made a very important point when he said that the jury had been to listen to each other on the one hand, but maintain one's own honest beliefs on the other. When they reached an impasse, only half of that instruction was repeated to them, the half about listening to other people's opinions and not sticking to your own. But, Ms. Clare, we can't ignore the fact that the jury had been given the full set of instructions before, can we? No, I don't think you can ignore it, but I think – We have to look at it in the totality of the circumstances. And I think the most important fact about the totality of the circumstance is that the jury, the instruction the jury was given about deliberating changed from a theoretical one to one addressed to their impasse. And when the instruction was addressed to the fact of an impasse, the need not to acquiesce dropped out. What did that tell the minority jurors? But under these circumstances, the most important thing to do – But that assumes that they completely ignored everything that they'd been told in the prior jury instructions. No. I don't think we can do that. With what they'd been told in the prior jury instructions, they deadlocked. Using that original instruction to balance listening but not giving up, that left them deadlocked. The judge then changed the instruction and said, listen to each other and be willing to question your position. Then they reached a verdict. That suggests coercion. Thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain,thomas, Tallman